Good morning. John DiStefano IV, the plaintiff, and I'd like to reserve five minutes for rebuttal. The issues in this appeal are whether USAA's disclosure of insurance coverage for reasonable health care expenses incurred for bodily injury caused by an automobile accident is deceptive when the insurance policy itself provides only short-term medical coverage for one year. And second, whether the exclusion of all coverage for treatment occurring more than a year after an auto accident violates Colorado public policy as it conflicts with the MedPay Act. This court should reverse. USAA's arbitrary one-year time limit on coverage fatally conflicts with its promise of coverage for reasonable accident-related medical expenses because accident-related expenses that are reasonable in amount may and often do arise more than a year after the accident. So based on this language, the insured is not getting what he thought. So the insurer then would have to just keep paying until, well, until there were no bills submitted? Correct. According to the reasonable expectations that this disclosure form establishes. That's right. That would be pretty remarkable, wouldn't it? That's endless, right? Is that what you're saying? Endless coverage. I'm saying that that's the reasonable expectation of the insured. There's a policy period that determines what accidents are covered. But there's no indication on this policy form that a second policy period would apply to the ---- How does that come into play? Well, the Colorado law requires the insurer to disclose and offer $5,000 in medical payments coverage. Does that in any way limit the reasonable expectation of the insured? I think what the insured receives as an offer is an offer of $5,000 of coverage and the time period that governs that offer is just as material as the amount. The fact that the insurer actually markets it in higher and higher amounts, here the insured purchased $100,000 of the coverage. And countrymen, the insured purchased $25,000 of the coverage. How is someone buying insurance or who has an insurance policy supposed to evaluate the value of that coverage without knowing exactly the time period that it would apply to? Go ahead. Excuse me. The time period is in the policy. I mean, at least as I sat to sit here, I heard you at least ---- I heard you conflate the policy and the disclosure form. Those two aren't the same thing. I mean, you refer to them interchangeably. They aren't the same thing. The disclosure form specifically says it is at the policy. And so, why shouldn't the policy be the determinative thing here, particularly since the disclosure form refers you to the policy? And the policy tells you what the limit is. Because the disclosure form still has to be accurate. And plaintiff's position is that this disclosure form is inaccurate. It defeats the purpose of the disclosure requirement if we were to allow insurers to make false statements in the disclosure. What is the false statement? The false statement is that the MedPay coverage applies to reasonable health care expenses incurred for bodily injury caused by an auto accident. It doesn't. Read the policy for more information, period. But it doesn't. Expenses that arise after a year can be completely reasonable and completely accident-related. In fact, accidents often do require extended treatment. And the reason that an insurer purchases coverage, particularly in large amounts, is to ensure that, you know, in the event of a catastrophic injury, they'll get the rehab they need. They'll be able to continue with treatment. They might need surgery. They might need multiple surgeries. I don't doubt that at all. But the point that at issue here is $100,000, as opposed to the $5,000 minimum, means that this would have been important to your client. Right? Exactly. And if it's important to your client, your client, why shouldn't your client be responsible for reading the policy, which they referred you to the policy? If I'm going to pay, you know, a premium for $100,000, it would seem to me that it's arguable, that it's reasonable that I read the policy that governs that specific provision. Unless the insured was sold on this type of coverage by relying on a statement, which can be completely, you know, misinterpreter is misleading. The statement is deceptive. And it's a jury question whether under the totality of the circumstances. Back in 2006, when the time period for coverage was changed, and your client was notified of that change, and then continued to pay premiums, thereby accepting the change. That is a reduced period of time. So isn't the insured stuck with that? No. She was told of the time limit, accepted the time limit. The notice that was sent to the policyholder, who's not the named policyholder, is not the named insured in this case. But the notice that was sent five or six years earlier is irrelevant, because someone receiving a new disclosure should be entitled to rely on what that disclosure says. And again, it's a jury question as to whether or not, you know, what the impact of other communications might be. But in this case, that one is so apparent. Now, how do you get around the disclosure says, this isn't the policy, you have to read the policy? Because the disclosure form creates such a strong impression that this coverage is time unlimited. It holds it up alongside health insurance. It says, this will pay before your health insurance. It will cover your coinsurance and deductibles. Do you have any cases that support your argument? On this particular statute? On this particular point? On this particular, the MedPay statute, no. But as far as the impact of disclaimers, we cite the May Department Stores case. We cite the, excuse me, the Dilworth, excuse me, the, yes, the Dilworth and Gill cases. Glazuski on the misrepresentation of policy provisions. The fact that when you're, just because the legislature requires coverage to be offered does not license an insurer to sell it in a deceptive way. I mean, what USA has done here is taken a mandatory disclosure process and turned it into a means of deception. Because that one-year time limit is not in the coverage that's required to be offered by statute. They invented it. They invented it. And it would take three words for them to have avoided this entire problem. If the disclosure itself had said for one year. But we have that problem, too, that the Department of Insurance said, here is the form disclosure you are to use. And they have used it. I mean, how can we fault them? Because the disclosure regulation also allows the insurer to disclose additional or more specific information. And that is the insurer's responsibility when they alter the coverage in a way that renders the disclosure misleading. Otherwise, they're free to take advantage of this, you know, supposed regulatory mandate to deceive the public, which goes directly against the entire purpose of the disclosure regime. By alter the coverage, do you mean offer higher amounts of net pay? No, by imposing the one-year time limit. Net pay itself, if you were to just, if you were to write coverage exactly as it's prescribed under the statute, there would be no time limit. That's an additional condition that's been imposed by the insurance company. Different insurance companies impose different time limits. And, again, it's a matter of unfair surprise. The Doctrine of Reasonable Expectations says under Bailey, I mean, this is the other, you know, fundamental case law support. So under Bailey, when conduct of the insurance company would lead a reasonable insurer to believe that the coverage is there, then that reasonable expectation is enforceable regardless of what the policy says. And the Wen course, the court in Wen points this out, that the failure to read one's policy is not always dispositive. No, it isn't. But the one-year limit is not hidden somewhere in the policy. It is pretty clear if you go look at the policy where it is. And I'm looking at the disclosure form now, refreshing my memory, that in all bold caps, in bold and in all caps, it says please read your policy. I mean, that is the biggest thing on the form. I mean, if you cared enough to pay for $100,000 of coverage, wouldn't you think you'd go look at the policy when you have something in all caps saying to do that? Not when the limitation is so arbitrary and inconsistent with what an insurer would expect. And again, those expectations are a jury question. They're not for the court to decide. Well, you know, reasonable expectations can be determined as a matter of law. I don't think you're disputing that, are you? They can. Okay. But we submit that this form would support a finding by a jury that it's misleading. If you were to exclude all coverage on Tuesdays or in the first six months of the year, it can't be the case that the insurer can make a disclosure that's inconsistent in any degree, just because this form is required and because it directs the insurer to read the policy. That cannot be the law. Should we hold this case up for the Supreme Court's decision in Nguyen? The plaintiff submits that we should. The Supreme Court has not yet decided whether to accept or reject the certified questions. But the certified questions in Nguyen are exactly governed in this case as well because the pleadings, the complaint, the allegations, the claims are substantively identical to those asserted in this case. Does the court tell the parties in advance that we do accept it and now you get to do additional briefing? Is that the way it works? Typically, that's plaintiff's understanding. However, it has been two and a half years since the question was submitted by the district court in Nguyen without any further action by the Supreme Court. So it's possible that an opinion doesn't work, but we have no specific knowledge. An opinion? I mean, first they accept the question, do they not? Typically, yes. Yes. And they would notify counsel of that? That's what we would expect. The reason for the delay is simply a mystery. Should we certify this case? There's an idea. We could add to the list. Give them a cake and a pie. Plaintiffs would not object to that. If there's no further questions at this point, I would reserve my time. Thank you. Good morning. Good morning, Your Honors. May it please the Court. Jeremy Mosley on behalf of Appellee USAA. This case is not about the single sentence in the summary disclosure form, as appellant has argued. It is about appellant's attempt to remove a one-year MedPay term time limit from his wife's auto insurance policy ten years after it was added, ten years after receiving notice, and after paying premiums every six months for that policy for ten years. And to do that, appellant focuses on two particular statutes. First, appellant argues that any time limit whatsoever violates the Colorado MedPay statute, Section 635. Recognizing no court has adopted that view, all courts to consider it have rejected that argument, appellant argues in the alternative, then, that there is a deceptive disclosure here, that the disclosure form that USAA sent to comply with DOI and statutes, the DOI regulations, Section 636 of the statute, is a deceptive disclosure. I'll handle those arguments in reverse order, since that's how appellant has framed his appeal here, starting with the deceptive disclosure under Section 636 and the arguments we just heard about the reasonable expectations doctrine. The crux of appellant's argument on the reasonable expectations doctrine is that he is allowed to read and rely solely on a 2012 disclosure form without regard to the language of the policy and without regard to any prior disclosure. Under Bailey, the only extrinsic evidence he relies on outside the policy is this single 2012 disclosure form. However, his argument actually turns the reasonable expectations doctrine on its head. In the Shelter Mutual case, in the context of an insurer-ed relationship, the Colorado Supreme Court held that the reasonable expectations when there is a policy renewal, which is what the 2012 policy was, a renewal, is that the insured is entitled to assume, unless adequately notified, he can rely on the assumption that the renewal contract provision remains unchanged. The fact is, in 2012, it remained unchanged. As Judge Briscoe already pointed out, in 2006, when the policy did change, appellant or the policyholder received notice. That's on appendix page 177, that notice that was received. I don't know why that's reasonable to expect somebody to go back to 2006. They've got a document there in front of them that summarizes what this policy is, refers them to this policy. I'm supposed to say, oh, you know, in 2006, I got this document and I'm going to go fish it out and figure out what that says. How many people do you know that do that? Your Honor, that's not what's expected to be reasonable, that you have to go back to 2006. The reasonable expectation is if your policy changes after the time of purchase or moving past time of purchase, we're talking about policy renewals. If your policy changes at the time of a renewal, the insurance company has to give you notice of that. In fact, in Shelter, the insurance company was saying, here's that at the time of renewal, here's a new policy, go read it, we're not even going to tell you what's changed. And the court rejected that saying, no, the insured is entitled to assume their policy has not changed. That's the reasonable expectation is that your policy has not changed. So in 2012, the issue isn't you have to go back and find 2006. You can read the policy you have with you in 2012 and see the one year limit. The issue is the doctrine itself supports the premise that the insured is only entitled to rely on the fact that his policy did not change in 2012. And in fact, it didn't change. He's not entitled to read a summary disclosure form in 2012 and ignore the policy language. That would be to turn the reasonable expectations doctrine for the insurer-insured relationship in the context of a renewal on its head. That's why this Court should reject the application or appellant's proposed application of the reasonable expectations doctrine in this context. Now, looking to the summary disclosure form itself, looking at Appendix Page 224, the disclosure that appellant looks to, appellant focuses on a single sentence to say reasonable health care expenses are to be covered. He cites to the discussion about health insurance we heard, which again points out it's not replacing health insurance coverage at all. It works with it. An appellant wants to focus solely on that one sentence without regard to the rest of the context. The appellant's argument in this sense is akin to asking this Court to walk into a darkened room, turn on a tiny flashlight, and point at one section and describe the room. And if anything he comes away with from that little penlight turns out to be different from what the room is when the lights are turned on, then it was deceptive and misleading. That's not the context. That's not how this Court should analyze the document. Why? Just taking that very same little flashlight and moving it around the same section, on Appendix Page 224, the Court can see the very last sentence, a sentence required by the DOI says please read your policy for other conditions and exclusions. But take another step back, a slightly larger flashlight for the context of this form. This is a four-page form at the back of the policy packet. Then on the first page of it says it's a general description. It's not a policy at all. That's what it says. And it says in bold all caps, please read your policy for complete details. This summary disclosure form shall not be construed to replace any provisions of the policy itself. Now, turning the lights on for the context of this particular disclosure form, it came in an automobile policy packet that starts on Appendix Page 185. When you look at that summary disclosure form, it says at the top it's Page 38. An appellant's argument is he's entitled to turn to Page 40, read only one sentence, ignore the rest of that paragraph, ignore the rest of the summary disclosure form, and ignore what the policy said on Page 19, which was expenses must be incurred for services rendered within one year from the date of the auto accident, Appendix Page 203. It's not legalese. It's not buried in the fine print. It's not hidden in a different section of the exclusions. It's right there in the plain language. Context matters. This is the context in which appellant or the policyholder received that summary disclosure form that's required by statute. In that particular instance, it came with the policy, and he could have easily turned the page and easily read and understood the one-year limit. That is why the district court was correct in finding that it is not deceptive or misleading as a matter of law in this context. Further, appellant's argument, if taken to its logical conclusion in the way that he seeks to parse out reasonable health care expenses, would mean that this statutory disclosure form in Section 636 actually misrepresents the coverage provided in Section 635. And let me show you what I mean. Appendix Page 224, what appellant is focused on, it talks about reasonable health care expenses incurred because of an automobile accident. An appellant has argued in his briefs that that means reasonable refers to pricing,  If you add any other condition, appellant's argument goes, you must then disclose that new condition as well. The problem is, that's not the language that matches the statute. So it can't be parsed this way. Section 635, Section 2A, actually says that MedPay covers, quote, medically necessary and accident-related trauma care or medical care. Medically necessary are the words in the statute. They're the words in the policy. They're not the words in the summary disclosure form. And that is a difference. And let me explain. Let's say someone's in an accident and their back hurts and they're sore. And so they go and get a massage. And that helps. They feel better. So they keep going back and getting a massage. And they do that twice a week for six weeks, six months, a year. They're still getting massages. And the massage therapist charges a reasonable amount of money for that massage. It's a reasonable charge. It's related to the accident. They weren't doing it beforehand. But is it medically necessary? It is possible that someone reviewing that treatment would determine, you know, massages are very helpful at first to help loosen your muscles and help you to recover. But doing that every week for six months is not actually providing a medical benefit. It's not medically necessary to help your body recover. That medical necessity is something allowed by the statute in Section 635. Those are the words it uses. But it's not something that would be allowed under the disclosure form that just says reasonable health care expenses. That's the problem with Appellant's argument. He's parsing it so carefully and finitely that the disclosure form itself in Section 636 would be a misrepresentation of the coverage actually provided in Section 635. Because that's not the purpose of this disclosure form. It's promulgated by statute, by DOI regulation. It says up front it's not intended to tell you. It's not your policy is what it says. It says this is a general guide to what these types of coverages cover. That's all it's intended to do. And in that context, no reasonable person, as the district court found, would parse out this disclosure form in the way that Appellant seeks to do and it is not deceptive or misleading as a matter of law for that reason. Now, we've set forth alternative bases for affirming the district court's order in our briefing and I'm going to leave those arguments to the briefing unless there are any specific questions. Otherwise, I'll turn to the time limit issue and address why a time limit does not violate the MedPay statute. Now, important to understand is the sole issue for time limits on appeal is does the MedPay statute prohibit all time limits? Appellant has not argued that one year is somehow different from two years, is somehow different from five years or even six months. Appellant has only argued no time limits whatsoever and has specifically said the court and countrymen got it wrong. That is another reason why this court should not certify to the Colorado Supreme Court nor, Judge Seymour, as you asked, should we wait to hear what the Colorado Supreme Court has to say a case that still hasn't decided whether it's ever even going to accept. But it's a question of state law and even more tied to the state of Colorado, public policy in this state. That's right. Shouldn't the Colorado Supreme Court be the arbiter of those issues? Ultimately, they are and they can be if they choose to be and yet what we see in Winn is that they apparently have no interest in doing so and significantly the only question that could be relevant here is the question of are all time limits prohibited, which this court and countrymen already answered. The other question, this court and countrymen did not answer that. One panel of this court answered that. Countrymen is not binding on us, is it? No, Your Honor. It is not binding and it's an unpublished decision. I did not mean to imply that it was. But what I meant is that multiple courts have certainly had no difficulty answering this first question. Now, here's the most significant thing. If the Colorado Supreme Court wanted to answer the question and say all these courts that are considering this are getting it dead wrong, no time limits are allowed under Colorado law, they could have easily accepted certification long ago and answered that question. And yet, as Judge Martinez in the Winn case said when he certified questions, he said I'm going to start with that as the first question because that follows the questions I really want to know. But even he said at that point, that strikes me as the least likely result, that no time limits whatsoever are allowed. We can also see, though, as the court did in countrymen, why the legislative history confirms that time limits are allowed. Multiple courts have already looked at the legislative history related to the trauma care and the fact that it prioritized trauma care in such a low amount of coverage, $5,000, that would tend to indicate it's not intended to be something that lasts a long time. Well, using your reference to massages, you can get a lot of massages for $5,000. You don't know how long that's going to last. What do you do with subsection C? I mean, in the briefing it's referred to, I think, by plaintiff in their reply brief as a paradox. If you would have a situation in which the insurer did not comply with the requirements of the MedPay statute, the subsection C has no time limit. Presumably they'd have to pay $5,000 as long as $5,000 would last, wouldn't they? That's an open question. First of all, though, I don't think it conflicts with having a time limit because the statute as a whole doesn't say anything about time limits. But doesn't it say that the Colorado legislature contemplated there would be no time limits? They didn't impose a time limit when they defaulted back based upon an insurer not doing what they were supposed to be doing. The statute nowhere contemplates a time limit. So there's no indication they contemplated a time limit at all or that they contemplated that there can't be a time limit is the key. They never contemplated that this has to be time unlimited benefits. The other thing is subsection C talks about how $5,000 in MedPay coverage will be added to the policy. Your Honor, I believe it's an open question. Does that mean the $5,000 that they would have provided any other insured? I think very likely yes because there would be other terms and conditions that would apply under that policy. It just means that if you didn't offer it, they automatically get the $5,000. Well, it doesn't say anything about what you would do for some other insured. It just says that if you don't offer it, you're on a hook for MedPay for $5,000 and period. That's the end of the sentence. It doesn't say anything about a time limit being on it. Why wouldn't I be able to assume by reading that that as long as I could exhaust that $5,000, I could be doing that? That may be possible on the subsection C relief in that sense. But in terms of the policy itself, as Countryman held, time limits don't violate the intent. And specifically, what hasn't been really pointed out is that MedPay coverage already existed at the time the statute was being passed. The goal of the statute, appendix page 575, was to change the model from an opt-in model to an opt-out model. And the Chairman of the House Committee recognized it's only $5,000. We're not talking about covering health care reform and things like that. You could exhaust that in 24 hours, really. What we're talking about is with an existing MedPay coverage, policies already in place, including this policy, already in place since 2006, what the legislature was trying to do was change that base of more people from an opt-in basis to an opt-out basis, more people having minimal threshold of coverage to shore up the trauma care industry. And, Your Honor, I see I've gone over. Thank you. Thank you, Counsel. Thank you. The shelter case doesn't help the defendant because this case turns on a new disclosure form rather than what an insured can rely on based on a previous iteration of the policy. And, you know, whether or not an insured can rely on a given policy to assume there are no material changes is a different question as to whether this disclosure form creates a different impression. The USA's argument about the language of the disclosure just highlights the danger here of allowing the insurer to convert this form into a means of deception by touting all the benefits of MedPay coverage as the legislature and the DOI require it to do without disclosing a serious curtailment that's inconsistent with coverage for reasonable accident-related medical expenses. And to go to the disclosure statute, which Counsel was addressing, 104636, Subsection 4A, medical payments coverage, this is the disclosure form is prescribed under the statute, requires disclosure of coverage for reasonable health care expenses up to the policy limits chosen by the insured. The DOI form doesn't include that language, but it shows that the legislature holds the policy limits material. The disclosure form incorporates the declarations page, which lists 100,000. And so if you're holding the disclosure form and the declarations page, you see 100,000 reasonable medical expenses caused by the accident-related medical expenses and would have no reason to expect the surprising limitation of that coverage to simply one year after the accident. To answer the Court's earlier question and Counsel's objection to time-unlimited coverage, medical necessity is exactly the standard. The fact that after a certain amount of time, a claim adjuster looking at the medical claims would be able to evaluate whether or not a certain treatment was medically necessary. But there's no reason to assume that one year or two years or three years or whatever each different insurance company applies, there's no reason to assume that a set time cutoff is going to determine medical necessity for everyone in every accident. As far as the legality of the time limit itself and the certified questions, the complaint in this case alleges that the one-year time limit is invalid and plaintiff submits that it's inconsistent with the text of the MedPay statute. The questions certified to the Court address the legality of all time limits, the standard under which time limits should be judged, so they will directly apply in this case once they are answered by the Supreme Court. And finally, the Court is exactly right that the disclosure provisions and the remedial provisions of the MedPay statute show the paradox that was not resolved in Countryman, which is that an insured who receives an offer, who didn't receive any offer of coverage at all, would wind up with better coverage than an insured who received an offer of coverage from USAA. So it could not have been the intent of the legislature to empower insurers to offer worse coverage. In fact, it makes very little sense to mandate coverage when the offer of coverage itself is unknowable. It's amorphous. What are we requiring if insurers can cut back on the amount of medical expense coverage as much as they want by using a time limit? What is the mandate there? If there are no further questions from the Court, I'll submit. Thank you. Thank you, counsel. Thank you both for your arguments this morning. The case is submitted.